UNITED STATES v. TWO HUNDRED AND FIFTY BARRELS OF MOLASSES. See Case No 14,293.

## Case No. 16,579.

UNITED STATES v. TWO HUNDRED AND FIFTY-SIX BARRELS OF BEER.

[2 Bond, 395.] [1]

District Court, S. D. Ohio. Oct. Term, 1870.

INTERNAL REVENUE — FORFEITURES FOR FRAUD — INTENT—ILLICIT SALES OF BEER—EXTENT OF FORFEITURES.

1. Under section 9 of the internal revenue act of July, 1866 [14 Stat. 146], it is a necessary element of the frauds specified in it that there should be an intent to defraud, by evading the payment of the tax or duty imposed by law.

2. Under said section, not only is beer proved to have been illicitly sold or intended for sale, without payment of the tax imposed by law, subject to forfeiture, but all the beer found in possession or custody of claimants, and the raw materials, fixtures, and appliances of the brewery are, by law, infected with fraud.

Warner M. Bateman, U. S. Dist. Atty., and Lewis H. Bond, for the United States.

Richard Harrison, James Sloane, and Mr. McClelland, for claimants.

LEAVITT, District Judge (charging jury). The United States claim, in this proceeding, the forfeiture of two hundred and fifty-six barrels of beer, and numerous articles of personal property, found at and pertaining to the brewery of the claimants, Weber & Beihl, at the town of London, in Madison county. The property has all been seized, by order of the collector of revenue, and is now proceeded against as forfeited to the United States, for alleged frauds by the said claimants. The case is one of great interest to these claimants, not only as it involves a large amount of property, but as its result

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

may affect their position in the community. It is not necessary to detain the jury by an elaborate statement of the different charges set out in the information as the grounds on which the counsel for the United States ask for a verdict of forfeiture against the property in question. The controlling and decisive inquiry for the jury is, whether the charge of fraud in the manufacture of beer by these claimants is established by the evidence. If the fact of fraud, as charged, is made out, there is no room for doubt that, under the stringent operation of the internal revenue laws, not only is the specific beer proved to have been illicitly sold or intended for sale without the payment of the tax imposed by law, subject to forfeiture, but all the beer found in possession or custody of the claimants, together with all the raw material, fixtures, and appliances of the brewery. Upon the theory that fraud has been perpetrated in the establishment, all the property and effects pertaining to it are, by law, infected with fraud and liable to forfeiture. This results from the comprehensive and far-reaching operation of section 9 of the revenue act of 1866, under which the charge of fraud set forth in the first count of the information is based. Without attempting to state all the provisions of that section, the court may remark that it is a necessary element of the frauds specified in it, that there should appear to have been an intent to defraud by evading the payment of tax or duty imposed by law. And, in the absence of proof warranting the inference of such fraudulent intent, there can not be a conviction under that section. It will be for the jury to say whether, from the evidence, fraud is proved.

It will be obvious to the jury, that the only issue on which they are to pass in this case is, whether these claimants, as manufacturers of beer, have sold the article, or offered it *for sale*, without the proper stamps on the barrels or casks, showing the payment of the tax as required by law. This is the sole question in this case. The charge in one of the counts in the information, that beer was removed, sold, or offered for sale with stamps which had been before used, is not insisted on by the attorneys for the government. The only fact of fraud, relied on as proved, relates to the seven kegs of beer sent by the claimants from their brewery to the town of Washington for sale, and which were found deposited in a cellar in that place. It is claimed, by the district attorney, that these seven kegs were without stamps, and were therefore removed and in the market without any evidence of the payment of the tax. If the jury are satisfied that this fact is established by the evidence, it would warrant a verdict of forfeiture as claimed by the government. The fact, that the beer had been sent from the brewery without the payment of the tax, would justify the legal conclusion that there was an intention to evade the tax, and involved a violation of section 9 of the statute before referred to. On the other hand, if the United States has failed to convince the jury that these seven kegs were without stamps, this prosecution fails and your verdict must be for the claimants. As to the point indicated, the jury will have perceived there is conflict in the evidence of the parties. If the testimony of the witnesses for the government is credible and uncontradicted, the jury will have no hesitancy in concluding that the seven beer kegs, when discovered at Washington, were without stamps, and that the law had been violated and a forfeiture incurred. But there is testimony tending to prove that all the beer sent from the claimants' brewery to Washington was stamped at the brewery, with the exception of one load, and as to that, as the day was wet and there was danger the stamps might be destroyed or defaced by the rain, stamps were furnished to the driver of the wagon, to be put on the kegs after their arrival at Washington; and the driver swears they were put on according to instructions.

It seems quite unnecessary to notice the evidence in detail. The jury have doubtless a clear understanding of the issue on which they are to pass, and the evidence which applies to it. I leave it with them to decide which way the evidence preponderates. It may not be out of place to remark, that several witnesses for the claimants testify, affirmatively, that all the beer kegs shipped from the brewery, with the exception before noticed, were duly stamped; and as to that exception, a satisfactory reason is given why the stamps were not put on at the brewery. Opposed to this, the jury have the negative testimony of the government witnesses that there were no stamps on the seven kegs they examined. The jury will bear in mind, that the failure to place stamps on the seven kegs is the only fact of fraud charged against the owners of the brewery. The evidence of the revenue officers, at London, is in favor of the integrity of the owners in regard to government taxes. They swear, with all their vigilance in the detection and punishment of frauds on the revenue, they found nothing in the management of this brewery to induce a suspicion that it was not honestly and fairly conducted, so far as the rights of the government were concerned. This testimony is highly creditable to these claimants, and the jury may properly inquire what should be its effect as bearing on the specific fraud charged against them. It would certainly be legitimate, as repelling any presumption of the fraud, and put the government, if it would claim a forfeiture, under the necessity of proving it by clear and indubitable evidence.

I have purposely avoided any discussion or notice of the sections of the statute other than the ninth, to which I have adverted. There seems no necessity for bringing other sections specially to the notice of the jury, for the plain reason that if the jury should find

the fraud charged, the case would be clearly within the scope of section 9; and on that a verdict could be based. The case is therefore simplified, and more intelligible to the jury, by limiting their inquiries to the counts framed under that section.

The verdict of the jury was, that there was no cause of forfeiture; and an order of court was entered for the restoration of the property seized to the possession of the claimants.